UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JENNIFER DONLON,

                              Plaintiff,

                                                                 Case # 23-CV-6096-FPG

v.

                                                                    DECISION & ORDER

CITY OF HORNELL, *et al.*,

                              Defendants.
_____

## INTRODUCTION

This action arises from Plaintiff Jennifer Donlon's alleged removal as an assistant city judge in the City of Hornell. She brought this action under 42 U.S.C. § 1983 against, *inter alia*, Defendant City of Hornell.[1] On the same day that Plaintiff filed her complaint, she moved for a temporary restraining order pending further proceedings on her motion for a preliminary injunction. ECF No. 2. The Court denied Plaintiff's request for a TRO but ordered expedited proceedings on her motion for a preliminary injunction. *See* ECF Nos. 10, 14. The parties have submitted their briefing on the motion. ECF Nos. 22-24. On February 24, 2023, the Court held oral argument on Plaintiff's motion. For the reasons stated herein, Plaintiff's motion for a preliminary injunction is DENIED.

## BACKGROUND

The following facts are taken from Plaintiff's amended complaint and supporting materials. Plaintiff alleges that, until early February 2023, she was the "duly appointed Assistant City Judge"

---

[1] The other defendants involved in this action—the New York State Unified Court System and the Honorable Tamika Amaker—have been dismissed from the action. ECF Nos. 14, 26.

1

for the City of Hornell.² ECF No. 11 at 1 (internal quotation marks omitted). Her term was set to expire on March 7, 2023. *Id.* at 2. Plaintiff claims that, at a "secret meeting" held on January 23, 2023, the City's Common Council³ voted to remove her from her position. ECF No. 4 at 2; ECF No. 11 at 2. At the same meeting, the Common Council voted to appoint a different candidate as assistant city judge for the upcoming term. ECF No. 11 at 5. Plaintiff's central allegation is that the Common Council took these actions in order to "punish[] her for her sincerely held religious belief[s]." *Id.* Specifically, Plaintiff is a "baptized Catholic" who refuses to receive "a Covid-19 vaccination" due to her religious beliefs. ECF No. 4 at 12.

The dispute over Plaintiff's vaccination status arose in August 2021, when the New York Unified Court System "promulgated a requirement that each of its employees, including [P]laintiff, had to be vaccinated against COVID except if they qualified for a religious or medical exemption." ECF No. 11 at 5. In December 2021, Plaintiff was denied a religious exemption—though she alleges that the vaccination requirement, and the process by which her religious exemption was adjudicated, are constitutionally suspect on several grounds. *See id.* at 5-11; ECF No. 4 at 16. In any case, because Plaintiff refused to obtain a COVID-19 vaccine and did not receive an exemption, the Unified Court System barred her from entering "any [Unified Court System] facility." ECF No. 4 at 18. Plaintiff continued to perform her duties and conduct "judicial proceedings virtually." ECF No. 11 at 4.

---

[2] In her reply affidavit, and contrary to her amended complaint, Plaintiff asserts that there is no position called "Assistant City Judge" and that the position is more properly identified as the "appointed City Judge." ECF No. 24 at 1. This quibble over the proper title of the position is immaterial. Whatever the title, it is undisputed that Hornell has two part-time city-court judgeships, one of which is an elected position and one of which is an appointed position. Plaintiff occupied the latter post. *See* ECF No. 22-3 at 1; ECF No. 24 at 1. Solely for ease of reference, the Court refers to Plaintiff's position as "assistant city judge."

[3] The Common Council is the City's legislative body.

2

In Fall 2022, Plaintiff notified John J. Buckley, Hornell's mayor, of her interest in remaining in her position for another term. Plaintiff alleges that, as the expiration of her term approached, she learned that the Common Council would oppose her reappointment. Plaintiff has variously claimed that the Common Council opposed her reappointment "because she had failed to vaccinate," ECF No. 1 at 4; ECF No. 23 at 3, because she was unable to hold proceedings in person, ECF No. 11 at 4; ECF No. 24 at 3-4, and because she could not maintain a criminal calendar while working virtually. ECF No. 23 at 3. In Plaintiff's view, by removing her and disqualifying her from reappointment on these grounds, the City "impermissibly punished her for her sincerely held religious belief[s]." ECF No. 11 at 5.

In her amended complaint, Plaintiff raises three claims challenging the City's actions, all of which are brought under Section 1983. First, the City violated her procedural due process rights by removing her without first providing her notice and an opportunity to be heard. *Id.* at 2-3. Second, the City violated her free-exercise rights under the First Amendment by removing her from her position as assistant city judge. ECF No. 14 at 2-3. Third, the City violated her free-exercise rights under the First Amendment by refusing to reappoint her for another term. ECF No. 11 at 3-5.

## LEGAL STANDARD

"A party seeking a preliminary injunction must establish that: (1) it is likely to suffer irreparable harm in the absence of preliminary relief; (2) either (a) it is likely to succeed on the merits, or (b) there are sufficiently serious questions going to the merits of its claims to make them fair ground for litigation; (3) the balance of hardships tips decidedly in its favor; and (4) a preliminary injunction is in the public interest." *Doe v. Zucker*, 496 F. Supp. 3d 744, 752 (N.D.N.Y. 2020). A party's failure to establish a likelihood of success on the merits of its claim

warrants denial of a preliminary injunction. *See Monserrate v. N.Y.S. Senate*, 599 F.3d 148, 154, 160 (2d Cir. 2010).

## DISCUSSION

As will be discussed below, the Court concludes that Plaintiff has not shown a likelihood of success on any of her claims. Her first and second claims fail because Plaintiff has not shown that the City, in fact, removed her from her position. Her third claim fails because Plaintiff has not presented sufficient evidence to support a free-exercise claim. As a result, Plaintiff is not entitled to preliminary injunctive relief on any of her claims.

### I.  Removal Claims

Plaintiff's claims that the Common Council prematurely and unconstitutionally removed her from her position as assistant city judge rest on an essential factual premise: that the Common Council did, in fact, remove her from that position. The record before the Court does not support that premise. Indeed, Plaintiff has not demonstrated that the Common Council even has the authority to remove a city-court judge from office.

In a letter dated February 3, 2017, then-Hornell mayor Shawn D. Hogan informed the Unified Court System's district executive that he had "appointed Jennifer L. Donlon to fill the position of Assistant Judge for the City of Hornell effective today, February 3, 2017." ECF No. 22-3 at 1. If Plaintiff's term began on the effective date of her appointment, then Plaintiff's six-year term would have ended on February 2, 2023. *See* N.Y. Uniform City Ct. Act § 2104(b)(3) [hereinafter "UCCA"]. Although this is the date that Plaintiff claims to have been "removed," ECF No. 11 at 2, it is more consistent with the City's assertion that "Donlon was not removed from office, [but rather] completed her full six year term." ECF No. 22-1 at 2.

In order to avoid the plain implication of her appointment letter, Plaintiff marshals evidence to demonstrate that her term did not expire until March 7, 2023. She points out that the expiration date on her ID badge—which had been issued by the Unified Court System—is March 7, 2023. ECF No. 23-1 at 2. With her reply brief, Plaintiff submitted another affidavit, in which she recounts several conversations she allegedly had with Mayor Hogan and the city attorney at the time of her appointment in 2017. Plaintiff avers that, based on those conversations, it is her belief that Mayor Hogan did not intend for the "'effective today' language to fix the dates [of her appointment]." ECF No. 24 at 2. Plaintiff's recollection is that "the Mayor left those details to the Unified Court System, which determined that [her] term would end on March 7, 2023"—as reflected on her ID badge. *Id.* The city attorney later reaffirmed to Plaintiff that her term "ended in March." *Id.* Plaintiff also avers that the vote on her reappointment was originally scheduled for February 21, 2023, which is consistent with her position that her term did not end until early March. *See id.* at 5. From the evidence showing that her term ended in March, Plaintiff draws the inference that her separation from the court system in early February was the result of her removal from office by the Common Council. She bolsters this inference by claiming that she "heard" from a "friend who ran into a common council member" that she had been terminated at a "special meeting." *Id.*

The evidence on which Plaintiff relies is noticeably circumstantial or reliant on the hearsay statements of non-affiants. She submits no meeting minutes, no formal records memorializing her removal from office, and no other documentation that even references a purported removal. It is difficult to believe that, in a setting as bureaucratic as public employment, an appointed judge could be summarily discharged without any sort of paper trail. Plaintiff might perhaps point to the Common Council's allegedly clandestine actions to excuse her lack of evidence. But, at least

5

based on the record before the Court, there is a more reasonable and far more simple explanation: there is no documentary evidence that the Common Council removed Plaintiff from her position because the Common Council did not remove Plaintiff from her position.  And the Common Council did not remove Plaintiff because it had no authority to remove her.

As the City correctly observes, while she was in office, Plaintiff was a *state* employee, not a *city* employee.[4]  *See* ECF No. 22-1 at 2-3.  "[A]ll justices [and] judges . . . of the unified court system . . . shall be employees of the state of New York and the salaries, wages, hours and other terms and conditions of their employment shall be determined in accordance with the provisions of [state law]."  N.Y. Judiciary Law § 39(6); *see also, e.g.*, *Gordon v. Albany Cty.*, 454 N.Y.S.2d 52, 53 (Sup. Ct. 1982) ("[A] County Court Judge is not an employee of the County.").  City courts are part of the unified court system, and their judges are therefore state employees.  *See* N.Y. Judiciary Law § 39(1); UCCA § 102 (stating that each city court "shall be a part of the unified court system for the state").

Pursuant to Article 6, Section 22 of the State Constitution, disciplinary authority over state judges is vested in the Commission on Judicial Conduct.  The Commission on Judicial Conduct has the "exclusive authority" to "receive, initiate, investigate and hear complaints with respect to the conduct and performance of official duties of any judge or justice of the unified court system." *Wilk v. N.Y.S. Comm'n on Judicial Conduct*, 468 N.Y.S.2d 626, 627 (1st Dep't 1983) (internal ellipsis and brackets omitted); *see also Sims v. Wachtler*, 548 N.Y.S.2d 474, 475 (1st Dep't 1989) (city-court judge could not challenge removal in state Supreme Court, as "the grant of jurisdiction over such cases pursuant to [the] State Constitution, Art. VI, § 22(a), is exclusive").  The only power that the City of Hornell exercises is the city mayor's power to appoint the assistant city

---

[4] At oral argument, Plaintiff conceded this point.

judge.[5]  *See* UCCA § 2104(e)(1)(iii).  Otherwise, neither the Common Council nor the mayor has the authority to alter the terms and conditions of an assistant city judge's employment or remove her from office.  N.Y. Judiciary Law § 39(6); *see also Bliven v. Hunt*, 478 F. Supp. 2d 332, 339 (E.D.N.Y. 2007) ("While judges are appointed by the Mayor of the City of New York pursuant to the New York State Constitution, the City does not have authority to remove Family Court judges. Judges can only be removed from office by the Chief Judge of the New York Court of Appeals upon recommendation of the state commission of judicial conduct." (internal citation omitted)).

Accordingly, on its face, Plaintiff's claim that the Common Council removed her from her position is implausible.  Given that the Common Council had no authority to effectuate Plaintiff's removal—even if it wanted to do so—the only reasonable inference from the available evidence is that Plaintiff's term of office expired as scheduled:  On February 3, 2017, Mayor Hogan appointed Plaintiff as assistant city judge.  Consistent with state law, Plaintiff's term lasted for six years.  At that time, a new assistant city judge took office.  *See* ECF No. 4 at 29.  Plaintiff was never removed from her position.

Because the record before the Court does not support the allegation that the Common Council removed Plaintiff, Plaintiff is unlikely to succeed on her claims that said removal violated her due-process and free-exercise rights.  The Court declines to grant preliminary injunctive relief on Plaintiff's first and second claims.

---

[5] In his affidavit, Mayor Buckley states that, pursuant to the city charter, he nominates candidates for the position and the Common Council "votes for the candidate of their choice."  ECF No. 22-1 at 3.  While that is a correct summary of the process contemplated by the City Charter, *see* ECF No. 22-2 at 1, state law clearly provides that it is the mayor alone who is vested with the authority to appoint the assistant city judge.  *See* UCCA § 2104(e)(1)(iii).  This discrepancy is immaterial to resolve the present motion, however.

## II.     Reappointment Claim

Plaintiff's third claim is that, by refusing to reappoint her, the City violated her First Amendment right to freely exercise her religion.[6]  *See* ECF No. 11 at 5.  The Court concludes that Plaintiff has not shown any likelihood of success on this claim, even accepting Plaintiff's allegations that the City denied her appointment either "because she had failed to vaccinate," ECF No. 1 at 4; ECF No. 23 at 3, because she was unable to hold proceedings in person, ECF No. 11 at 4; ECF No. 24 at 3-4, or because she could not maintain a criminal calendar while working virtually.  ECF No. 23 at 3.

"Section 1983 creates a private cause of action for deprivations, under color of state law, of a person's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States, 42 U.S.C. § 1983, including the First Amendment right to the free exercise of religion." *Lewis v. N.Y.C. Transit Auth.*, 12 F. Supp. 3d 418, 452-53 (E.D.N.Y. 2014).  "Where a municipality's policies or practices deprive individuals of their federal rights, the municipality may be held liable" under Section 1983.  *Id.*

"The Free Exercise Clause [] protects an individual's private right to religious belief, as well as the performance of (or abstention from) physical acts that constitute the free exercise of religion."  *Kane v. De Blasio*, 19 F.4th 152, 163-64 (2d Cir. 2021) (internal quotation marks omitted).  However, under *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990), an individual's religious beliefs do not excuse her "from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Smith*, 494 U.S. at 879.  That is, the right of free exercise secured by the First Amendment "does not relieve an

---

[6] As discussed in note 5, *supra*, there is a disagreement as to whether the appointing authority was Mayor Buckley or the Common Council.  Because it is not a material issue, the Court will simply assume that both the mayor's and the Common Council's actions are attributable to the City, and it will analyze the City's liability on that basis.

individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that [her] religion prescribes (or proscribes)." *Id.* And since states may "enforce neutral rules" notwithstanding a person's religious objections, the First Amendment "does not require the accommodation of religious practice." *Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006); *see also Kane*, 19 F.4th at 175 ("[T]he First Amendment likely does not require any religious accommodations whatsoever to neutral and generally applicable laws.").

"Neutral and generally applicable laws are subject only to rational-basis review," whereas "[l]aws and government policies that are either non-neutral or not generally applicable . . . are subject to strict scrutiny, meaning that they must be narrowly tailored to serve a compelling state interest." *Kane*, 19 F.4th at 164 (internal quotation marks omitted). "In terms of neutrality, the Supreme Court has been clear that the government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices *because of their religious nature*." *Emilee Carpenter, LLC v. James*, 575 F. Supp. 3d 353, 381 (W.D.N.Y. 2021) (internal quotation marks omitted). "[I]f the object of a law is to infringe upon or restrict practices *because of their religious motivation*, the law is not neutral." *Id.* A law or government policy must be neutral both on its face and in operation. *See Kane*, 19 F.4th at 164 ("A law that is facially neutral will still run afoul of the neutrality principle if it targets religious conduct for distinctive treatment." (internal quotation marks omitted)). "[A] law is not generally applicable if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Emilee Carpenter*, 575 F. Supp. 3d at 382 (internal quotation marks omitted).

Plaintiff has not demonstrated that the City's alleged reasons for denying her reappointment were either "non-neutral or not generally applicable." *Kane*, 19 F.4th at 164. On

its face, the decision to deny a person a judicial appointment because a person refuses to vaccinate is neutral, insofar as it neither "explicitly singles out a religious practice" nor "targets religious conduct for distinctive treatment." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021). In her papers, Plaintiff has a tendency to conflate her vaccination status with her religious beliefs, but the two are distinct. *See, e.g.*, ECF No. 3 at 2 ("[T]he City has refused to re-appoint plaintiff to her position . . . because she has failed to vaccinate against her religious principles and beliefs and for no other reason, punishing her for her religious beliefs."); ECF No. 23 at 3 (alleging that the City declined to reappoint her due to her "vaccination status, which derives from her religious beliefs and their exercise"). As recent Second Circuit caselaw confirms, the free-exercise clause does not exempt all religious objectors from neutral and generally applicable vaccination requirements. *See Kane*, 19 F.4th at 164, 166 (concluding that plaintiffs did not show a likelihood of success challenging vaccine mandate, where mandate applied to all staff, did "not single out employees who decline vaccination on religious grounds," and did not "treat secular conduct more favorably than comparable religious conduct"); *Hochul*, 17 F.4th at 273. Strict scrutiny under the free-exercise clause is only triggered if a plaintiff shows that the requirement in question is "non-neutral" with respect to religion or "not generally applicable." *Kane*, 19 F.4th at 164; *see, e.g.*, *M.A. v. Rockland Cty. Dep't of Health*, 53 F.4th 29, 37 (2d Cir. 2022) (concluding that reasonable jury could find vaccination requirement non-neutral based on religious animus of county officials, which suggested that the requirement was "designed to target religious objectors to the vaccine requirement *because of* their religious beliefs" (internal quotation marks omitted)).

Here, however, Plaintiff presents no evidence that the City's concern over Plaintiff's vaccination status was due to its "animosity towards particular religious practices." *Hochul*, 17

10

F.4th at 284. To the contrary, Plaintiff acknowledges that the City's concern was not her religious beliefs about vaccination, but the fact that her vaccination status interfered with her "ability to do [her] job while barred from the courtroom." ECF No. 24 at 4; *see also id.* at 6 ("[T]he only cause for the council's failure to re-appoint me was that as a consequence of my vaccination status, [the Unified Court System] barred me from the courthouse as a judge."). At the time the City considered Plaintiff's reappointment, the Unified Court System's vaccination policy prevented Plaintiff from holding proceedings in person. As a further consequence of that policy, Plaintiff was unable to handle any criminal cases. *See* ECF No. 24 at 4. The City's preference for a candidate who could hold proceedings in person and maintain the criminal caseload required of the position is "religion[] neutral." *Hochul*, 17 F.4th at 284. The City is free to prefer such a candidate, and Plaintiff is not, "under the auspices of her religion, constitutionally entitled to an exemption," *Id.* at 280, or to "preferential . . . treatment." *Hastings Christian Fellowship v. Martinez*, 561 U.S. 661, 697 n.27 (2010). Furthermore, Plaintiff presents no evidence that the City's preference was not generally applicable—*i.e.*, that the City relied on this preference in a selective manner, imposing "burdens only on conduct motivated by religious belief." *Emilee Carpenter*, 575 F. Supp. 3d at 382. There were only two candidates for the position, and, in accordance with its "religion-neutral" preference, the City selected an attorney who was vaccinated and could therefore conduct proceedings in person. *See* ECF No. 24 at 4-5.

Because Plaintiff has not marshalled sufficient evidence to show that the City's reasons for rejecting her reappointment were "non-neutral or not generally applicable," *Kane*, 19 F.4th at 164, the City's reasons need only be rational to pass constitutional muster. *See id.* at 166. As Plaintiff concedes, at the time the City made its decision, she was unable to hold in-person proceedings or handle criminal matters, ECF No. 24 at 4; it is entirely rational for the City to prefer an appointee

11

who would be able to fulfill those duties.[7] *Cf. Okwu v. McKim*, 682 F.3d 841, 846 (9th Cir. 2012) (state agencies had rational basis to deny reinstatement to former employee, where employee's "psychological disorders prevented her from fulfilling her former duties"). Therefore, Plaintiff's free-exercise claim relating to her reappointment is unlikely to succeed, and preliminary injunctive relief must be denied.

In reaching this conclusion, the Court has declined to consider whether the Unified Court System's vaccination policy was unconstitutional on First Amendment grounds.[8] "A municipality may be liable under § 1983 only if the governmental body *itself* subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation marks omitted; emphasis added). "[M]unicipalities are responsible only for their own illegal acts, and cannot be held vicariously liable under § 1983 for their employees' actions." *Id.* (internal quotation marks omitted). Likewise, municipalities cannot ordinarily be held liable for the unconstitutional acts of other governmental agencies. *See, e.g.*, *Jantzven v. Hawkins*, 188 F.3d 1247, 1259 (10th Cir. 1999); *Fleming v. Greenville Cty., SC*, No. 13-CV-3375, 2014 WL 346524, at *4 (D.S.C. Jan. 24, 2014).

In this case, Plaintiff does not present any evidence that the City played a role in developing, implementing, or enforcing the vaccination policy or its exemption process. The constitutionality of that policy is therefore immaterial to the question of the City's potential liability under Section 1983. To the extent Plaintiff believes that, because she was "taking legal action" to challenge the vaccination policy on religious grounds and was "confident that [she]

---

[7] At oral argument, Plaintiff argued that, from the perspective of the Unified Court System, she was properly fulfilling her modified set of duties. Even if that is true, Plaintiff fails to articulate why it would be impermissible for the City to prefer a candidate who could perform the full complement of civil and criminal judicial responsibilities. Plaintiff's mere disagreement with the City's preference does not render that preference "non-neutral" or "not generally applicable" with respect to religion.

[8] The Unified Court System rescinded its vaccination policy as of February 17, 2023. ECF No. 20-1 at 87.
12

would eventually get back into the courtroom," ECF No. 24 at 4, the City should have overlooked her inability to conduct in-person proceedings, Plaintiff presents no legal authority for the proposition that the City was compelled to accommodate her in that manner. *See Kane*, 19 F.4th at 175.

In sum, because Plaintiff is unlikely to succeed on her reappointment claim, the Court denies her request for preliminary injunctive relief.

### III.   Request for an Evidentiary Hearing

At oral argument, Plaintiff requested an evidentiary hearing to resolve the parties' disputes of fact. That request is DENIED. As is evident from the above discussion, the Court does not need to engage in any formal factfinding to resolve Plaintiff's motion. Plaintiff's claim that she was prematurely removed from her position is facially unreasonable, as she was a state employee whom the City had no authority to remove. And her claim that the City "punished" her for her religious beliefs fails because, even accepting Plaintiff's version of events, she has not shown a likelihood of success on her free-exercise claim. Given the disposition of Plaintiff's claims, a hearing is unnecessary.

### CONCLUSION

For the reasons stated herein, Plaintiff's motion for a preliminary injunction (ECF No. 2) is DENIED.

IT IS SO ORDERED.

Dated: February 27, 2023
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York